IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Herbert L. Hutchison,

    Plaintiff,

  v.                             Case No. 2:06-cv-297

Crane Plastics Manufacturing
Ltd., et al.,

    Defendants.

OPINION AND ORDER

    This is an action filed by plaintiff Herbert L. Hutchison against defendant Crane Plastics Manufacturing Ltd., his former employer, and against defendants Crane Plastics Co., LLC, Crane Plastics, Inc., and Michael and Tanny Crane.  In his complaint, plaintiff asserts claims of age discrimination under Ohio Rev. Code Chapter 4112 (Count One), retaliation under Ohio Rev. Code §4112.02(I) (Count Two); breach of contract (Count Three), and a claim alleging that the restrictions on punitive damages contained in Ohio Rev. Code §§2315.18 and 2315.19 are unconstitutional (Count Four).

    This action was originally filed in the Court of Common Pleas of Franklin County, Ohio on March 13, 2006.  On April 24, 2006, defendants filed a notice of removal of the action to this court on the basis that the breach of contract claim in Count Three, which challenges defendants' failure to pay plaintiff compensation allegedly due from his deferred compensation account, is completely preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et seq.  On May 24, 2006, plaintiff filed a motion to remand the action to state court.  Plaintiff argues in the alternative that even if Count Three is deemed to be

preempted by ERISA, the state law claims should be remanded to state court.

I. Requirements for Complete Preemption under ERISA

The provisions of 28 U.S.C. §1441 permit a defendant to remove an action from state to federal court when the federal district court has "original jurisdiction founded on a claim or right arising under" federal law. 28 U.S.C. §1441(b). Peters v. Lincoln Electric Co., 285 F.3d 456, 465 (6th Cir. 2002). The removing defendant bears the burden of proving that the plaintiff's claims are preempted by ERISA. Passcack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 401 (3d Cir. 2004).

In determining whether an action is removable under §1441(b), the "well-pleaded complaint rule" usually applies. Rivet v. Regions Bank of Louisiana, 522 U.S. 470 (1998). Under this rule, "a cause of action arises under federal law only when the plaintiffs' well-pleaded complaint raises issues of federal law." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). For removal to be appropriate, a federal question must appear on the face of the complaint. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983).

However, a "complete preemption exception" to the "well-pleaded complaint rule" has been recognized in cases where Congress' intent in enacting a federal statutory scheme was to completely preempt state law and create federal jurisdiction under 28 U.S.C. §1331. Peters, 285 F.3d at 467-68. Under this exception, a complaint may be removed to federal court and will be treated as alleging a federal cause of action for purposes of removal even though the complaint, on its fact, alleges only a

2

state law cause of action. Id. at 468, n. 11.

In regard to the removal of claims allegedly preempted by ERISA, the Supreme Court held in Taylor that the "complete preemption exception" applies to a state law claim which meets two requirements: (1) the claim "relates to" an ERISA plan within the meaning of 29 U.S.C. §1144(a), ERISA's preemption provision; and (2) the claim falls within the scope of ERISA's enforcement provision, 29 U.S.C. §1132(a). Taylor, 481 U.S. at 66; Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 (1983). If the state law claim both "relates to" an ERISA plan within the meaning of §1144(a) and falls within the scope of ERISA's civil enforcement provisions found in §1132(a), then the state law claim is completely preempted by ERISA and converted to a federal question for purposes of removal jurisdiction. Taylor, 381 U.S. at 66.

The first requirement for complete preemption is that the claim fall within the scope of ERISA's preemption provision, which states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined by ERISA. 29 U.S.C. §1144(a). ERISA preempts state laws relating to "employee benefit plans," not simply "employee benefits." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 7 (1987). An "employee benefit plan" includes an "employee pension benefit plan." 29 U.S.C. §1002(3). An "employee pension benefit plan" includes any plan, fund, or program maintained by an employer which provides retirement income to employees or results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C.

3

§1002(2)(A)(i) and (ii).

A law "relates to" an employee welfare plan if it has a connection with or reference to such a plan. FMC Corp. v. Holliday, 498 U.S. 52, 68 (1990); Shaw v. Delta Air Lines, 463 U.S. 96-97 (1983). State law includes "all laws, decisions, rules, regulations, or other State action having the effect of law[.]" 29 U.S.C. §1144(c)(1). Thus, a state law may relate to a benefit plan for preemption purposes even if the law is not specifically designed to affect such plans, or the effect is only indirect. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).

The second component of complete preemption requires that this court be able to characterize the state law claim as an ERISA enforcement action under §1132(a). Complete preemption occurs only if plaintiff's claims are the equivalent of an ERISA civil enforcement action. Ward v. Alternative Health Delivery Systems, Inc., 261 F.3d 624, 627 (6th Cir. 2001). The mere fact that ERISA preemption under §1144(a) may be raised as a defense, or is in actuality a defense, does not confer jurisdiction or authorize removal. Taylor, 481 U.S. at 64-67 (even if state law claim "relates to" an ERISA plan and is preempted by §1144(a), complaint is not removable unless it is also encompassed within ERISA's civil enforcement scheme).

In order to come within the well-pleaded complaint rule, the state law claim must be capable of being characterized as an ERISA enforcement action under §1132(a). Warner v. Ford Motor Co., 46 F.3d 531, 534-5 (6th Cir. 1995). Section 1132(a) authorizes a plan participant or beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under

4

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). The Supreme Court stated in Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S.Ct. 2488, 2496 (2004), that "if an individual, at some point in time, could have brought his claim under ERISA [§1132(a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted[.]"

II. Plaintiff's Breach of Contract Claim

In Count Three of the complaint, plaintiff asserts a breach of contract claim for failure to pay plaintiff the 2005 appreciation on his deferred compensation account and to pay him his prorated 2005 annual bonus. Complaint, ¶ 12. Defendants have produced documents indicating that the deferred compensation account referred to in the complaint is part of the Crane Plastics Company LLC Compensation Deferral Plan ("the Plan"), established by Crane Plastics Company LLC, the plan sponsor, by plan documents effective on January 1, 2002, and January 1, 2005. Defendants argue that the Plan is an ERISA plan, and that since plaintiff's breach of contract claim seeks to recover money allegedly due him from his plan account, his breach of contract claim is in essence an enforcement action under ERISA. The Plan documents reveal that the Plan is an employee pension benefit plan as defined in ERISA. The court concludes from the complaint that plaintiff seeks the payment of money allegedly due him from that Plan, and that Count Three may be characterized as an enforcement action under §1132(a). The issue before the court is whether the Plan is an ERISA plan or is exempt from ERISA coverage.

Plaintiff argues that the Plan is an "excess benefit plan" as defined in 29 U.S.C. §1002(36). That provision reads:

> The term "excess benefit plan" means a plan maintained by an employer solely for the purpose of providing benefits for certain employees in excess of the limitations on contributions and benefits imposed by section 415 of Title 26 on plans to which that section applies without regard to whether the plan is funded. To the extent that a separable part of a plan (as determined by the Secretary of Labor) maintained by an employer is maintained for such purpose, that part shall be treated as a separate plan which is an excess benefit plan.

An "excess benefit plan" is one which is established for the sole purpose of avoiding the benefit and contribution limits established by 26 U.S.C. §415.[1] ERISA does not apply to excess benefit plans which are unfunded. 29 U.S.C. §§1003(b)(5); Goldstein v. Johnson & Johnson, 251 F.3d 433, 437 n. 2 (3d Cir. 2001)("excess benefit plans" are not covered by ERISA). ERISA's preemption provision does not apply to plans which are exempt from ERISA coverage under §1003(b). 29 U.S.C. §1144(a).

Defendants contend that the Plan is not an excess benefit plan because it was not established for the sole purpose of avoiding the limitations of §415 of the Internal Revenue Code. Rather, defendants argue that the plan is a "top hat" plan. A top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation to a

---

[1] Section 415 provides that a plan "shall not constitute a qualified trust under section 401(a)" for special tax treatment if the plan provides for the payment of benefits in excess of the limitation in 26 U.S.C. §415(b), or permits contributions or other additions in excess of the limitation in 26 U.S.C. §415(c). 26 U.S.C. §415(a)(1). Section 415(b) currently prohibits the payment of an annual benefit which exceeds the lesser of $160,000 or 100 percent of the participant's average compensation for his high three years. Section 415(c) currently prohibits contributions and other additions to a participant's account which exceeds the lesser of $40,000 or 100 percent of the participant's compensation.

6

select group of management or highly compensated employees." 29 U.S.C. §§1051(2), 1081(3), 1101(a); see also Olander v. Bucyrus-Erie Co., 187 F.3d 599, 604 (7th Cir. 1999); In re New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996)(top hat plan must exhibit the required purpose and must also cover a "select group" of employees). The difference between a top hat plan and an excess benefit plan is that top hat plans can have multiple broad purposes, while an excess benefit plan has the sole purpose of avoiding the limitations imposed by §415. Garratt v. Knowles, 245 F.3d 941, 946 n. 4 (7th Cir. 2001).

Top hat plans are exempted from ERISA's participation and vesting provisions, 29 U.S.C. §§1051-1061, its funding provisions, 29 U.S.C. §§1081-1086, and its fiduciary responsibility provisions, 29 U.S.C. §§1101-1114. Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 274 (3d Cir. 2004); Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 287 (2d Cir. 2000); Hampers v. W.R. Grace, 202 F.3d 44, 46 n. 3 (1st Cir. 2000). This is because Congress deemed top-level management, unlike most employees, to be capable of protecting their own pension expectations. Gallione v. Flaherty, 70 F.3d 724, 727 (2d Cir. 1995).

However, top hat plans are subject to ERISA's reporting and disclosure provisions, 29 U.S.C. §§1021-1031, and ERISA's administrative and enforcement provisions, 29 U.S.C. §§1131-1145. See Garratt, 245 F.3d at 946 n. 4; Demery, 216 F.3d at 287; Olander, 187 F.3d at 604; Black v. Bresee's Oneonta Dept. Store, Inc. Security Plan, 919 F.Supp. 597, 602 (N.D.N.Y. 1996)(ERISA federal common law generally governs enforcement of top hat plans); Bigda v. Fischbach Corp., 898 F.Supp. 1004, 1015 (S.D.N.Y. 1995).

7

Because ERISA completely preempts state law claims that fall within the civil enforcement provision of ERISA, Taylor, 481 U.S. at 66, actions involving benefits payable from top hat plans are preempted by ERISA.  Garratt, 245 F.3d at 945-48.

An "excess benefit plan" is, by definition, one maintained "solely" for the purpose of providing benefits beyond the contribution limits imposed by §415.  Whether a plan meets the requirements for the "excess benefit plan" exemption may be determined through an examination of the surrounding circumstances and an analysis of the stated purpose of the plan as determined by its plain language.  Isko v. Engelhard Corp., 367 F.Supp.2d 702, 710 (D.N.J. 2005); Northwestern Mut. Life Ins. Co. v. Resolution Trust Corp., 848 F.Supp. 1515, 1519 (N.D.Ala. 1994).  In Gamble v. Group Hospitalization & Med. Serv., Inc., 38 F.3d 126, 129-131 (4th Cir. 1994), the court relied on plan language which specifically stated that the purpose of the plan was to avoid the limitations imposed by §415, and concluded that the plan was an "excess benefit plan" exempted from ERISA's coverage.  See also Isko, 367 F.Supp.2d at 710-711 (concluding from plan language that avoidance of §415 limitations was sole reason for plan).

In contrast, the court in Olander, 187 F.3d at 604, noted plan language indicating that the plan had three purposes, only one of which was to avoid the limitations imposed by §415, and concluded that the plan was governed by ERISA.  See also Garratt, 245 F.3d at 946-948 (where the plan's stated purpose was to provide benefits for certain salaried employees "in excess of the limitations imposed by the Internal Revenue Code" in general, and where the plan did not specifically refer to §415 and also had the purpose of

8

avoiding the limitations in 26 U.S.C. §401(a)(17), the plan was not an "excess benefit plan"); Giordano v. Thomson, 438 F.Supp.2d 35, 43 (E.D.N.Y. 2005)(plan with stated purpose of avoiding multiple provisions of the Internal Revenue Code, not just §415, was not "excess benefit plan"); Lawson v. Nationwide Mut. Ins. Co., No. CIV.A.05-1249, 2005 WL 1533102 at *7-8 (E.D.Pa. June 29, 2005)(where plan's stated purpose was to avoid 26 U.S.C. §§401(a)(17) and 415, plan was not maintained "solely" to evade limitations of §415 and was not "excess benefit plan"); Bass v. Mid-America Co., Inc, No. 95 C 1167, 1995 WL 622397 (N.D.Ill. Oct. 20, 1995)(plan with stated purpose of providing deferred compensation to plaintiff in recognition of his services and which did not indicate that its sole purpose was to provide benefits in excess of §415 limitations was not "excess benefit plan"); Catacosinos v. Applied Digital Data Systems, Inc., 592 F.Supp. 49, 50 (E.D.N.Y. 1984)(because employee was not required to receive maximum benefits allowable under §415 from employer's basic plan in order to participate in supplemental retirement plan, supplemental plan did not exist solely to provide benefits for certain employees in excess of §415 limitations).

Some courts have held that in order to qualify as an "excess benefit plan," the plan must specifically refer to §415 or its substantive provisions.  See Moore v. Acme Corrugated Box Co., Inc., No. CIV.A. 97-2150, 1998 WL 252043 at *13 (E.D.Pa. May 18, 1998)(plan which did not refer to §415 or its substantive provisions was not "excess benefit plan"); Northwestern Mut. Life Ins. Co., 848 F.Supp. at 1519 ("[B]ecause the limitations set forth in IRC Section 415 are not fixed, an employee benefit plan cannot

9

serve the purpose of providing benefits in excess of these limitations without expressly referring either to IRC Section 415 or its substantive provisions."); Flandreau v. Signode Supply Corp., No. 89 C 1782, 1990 WL 7370 *7 (N.D.Ill. Jan. 16, 1990)(plan was not "excess benefit plan" where plan did not refer to §415 and employees received benefits below §415 limits).

Whether a plan is an "excess benefit plan" is not determined by the nature of a particular employee's participation in the plan. The court stated in Olander, 187 F.3d at 604, "We read the statutory test for whether a plan is an excess benefit plan as turning on the purposes of the plan in general rather than on the specific way the plan applies to a party." The court further stated, "Even if a plan with other purposes has only the effect of avoiding the § 415 limitations in an individual's case, that does not mean that avoiding those limitations was the sole purpose for which the employer maintained the plan" and the plan is not an "excess benefit plan." Id. at 605; Garratt, 245 F.3d at 946.

The 2002 and 2005 versions of the Plan, under the heading "RECITALS," state that "the Sponsor adopted the Plan to enhance the career remuneration of its selected key management and highly compensated employees[.]" The Plan specifies that participation is limited to persons nominated as key employees by the Administration Committee. Plan, §2.01. The definition of the term "Key Employee" specifies: "No employee shall be a Key Employee unless such employee is in 'a select group of management or highly compensated employees' as that phrase is used in [ERISA]." Plan, §2.02. This comports with the requirements for a top hat plan. The Plan specifies that "deferred compensation benefits are to be provided

10

from the Plan on an unfunded basis[.]"  This satisfies the other requirement for a top hat plan.

Under the terms of the plan, an active participant may elect to defer up to forty percent of his total compensation by electing to have that money placed in the plan.  Plan, §3.02.  The term "compensation" is defined to include base salary, nonqualified profit sharing plan compensation, and bonus compensation, as well as any funds deferred under the Plan, any §401(k) plan, and any §125 plan in which the participant is eligible to participate.  Plan, §3.01.  The Plan also contains a provision under which the employer agrees to contribute an additional amount to the participant's Plan account equal to the smaller of one-half of the active participant's compensation deferred pursuant to §3.02, or 1.5 percent of the participant's total compensation, reduced by any matching contribution to any §401(k) plan.  Plan, §3.03.

The Plan contains no reference to §415 or its substantive provisions.  There is no language in the Plan suggesting that its purpose is to avoid the limitations on contributions or benefits found in §415.  There is no language restricting participation in the Plan to employees who would be affected by the §415 limitations.  The only stated purpose is the broad purpose "to enhance the career remuneration of its key management and highly compensated employees," which the Plan achieves in part through the matching contributions provided for in §3.03.

The parties offer conflicting information as to whether plaintiff's contributions to the Plan exceeded the otherwise applicable §415 limits. However, as previously indicated, the test for whether a plan is an excess benefit plan turns on the purposes

11

of the plan in general rather than on the specific way the plan applies to a party.  Olander, 187 F.3d at 604.  The fact that a plan with other purposes has the effect of avoiding the § 415 limitations in a particular employee's case does not mean that avoiding those limitations was the sole purpose for which the employer maintained the plan, and thus the plan is not an "excess benefit plan."  Id. at 605; Garratt, 245 F.3d at 946.

The Plan states in the "RECITALS" section that "it is the intention of the Sponsor and the Employers that the Plan be exempt from the provisions of Title I of [ERISA]."  Title I of ERISA is codified in Chapter 18 of Title 29, which encompasses ERISA's reporting, disclosure, participation, vesting, and funding requirements, the rules for fiduciary responsibility, and the administration and enforcement provisions.  It could be argued that this language demonstrates that the drafters of the Plan intended that it not be an ERISA plan.  However, a more likely interpretation of that language is that the drafters of the Plan intended that the vesting, funding and fiduciary provisions of Title I would not apply to the Plan, which is consistent with a top hat plan.  The Plan requires the Committee to perform record-keeping functions, to file all reports required by law, and to furnish reports, statements and other documents to participants as required by law.  Plan, §1.04.  This is consistent with the plan being a top hat plan, since those plans require compliance with ERISA's reporting and record-keeping requirements.  The Plan's general reference to Title I is not sufficient to indicate an intent on the part of the drafters of the Plan that the Plan be an "excess benefit plan" outside ERISA's scope of coverage,

12

particularly since the Plan fails to mention §415 or its substantive provisions.

In addition, the labels which an employer places on a plan, while subject to consideration, are not controlling on the issue of whether the plan is an ERISA plan. See Stern v. International Business Machines Corp. (IBM), 326 F.3d 1367, 1374 (11th Cir. 2003)(employer's mere labeling of the plan as and ERISA plan does not determine whether ERISA applies); Goldstein, 251 F.3d at 437 n. 2 (noting that in a previous appeal, the court decided that plan was a top hat plan despite fact that plan was styled as an "Excess Benefit Plan"); Miller v. PPG Industries, Inc., 278 F.Supp.2d 826, 831 (W.D.Ky. 2003)(fact that employer described plan as ERISA plan not determinative). If the Plan meets the requirements for an ERISA plan, the employer cannot avoid the application of any otherwise relevant ERISA provisions simply by stating in the plan that ERISA does not govern the plan.

Plaintiff has also presented the affidavit of his counsel that counsel attempted to obtain Plan reports from the Department of Labor, and that no statements relating to the 2002 or 2005 versions of the Plan were found. Defendants argue that the filing of a top hat plan statement is voluntary and not required under ERISA. However, even assuming that such a filing is required and that the Plan failed to meet this requirement, this would not establish that the Plan is not an ERISA plan. The failure to meet ERISA requirements does not exempt a plan from ERISA coverage. Williams v. Wright, 927 F.2d 1540 (11th Cir. 1991); Scott v. Gulf Oil Corp., 754 F.2d 1499, 1503 (9th Cir. 1985)(failure to meet ERISA requirements such as public reports does not exempt plan from ERISA

13

coverage, but merely indicates a failure by employer to comply with ERISA); Blau v. Del Monte Corp., 748 F.2d 1348, 1352 (9th Cir. 1985)("Once established, ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA.")(quoted in Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 551 (6th Cir. 1989)).

Since the terms of the Plan make no reference to the limitations of §415, the Plan is not an "excess benefit plan," but rather is a top hat plan governed by ERISA. Plaintiff's claim for benefits from the Plan is preempted by ERISA, and the claim is exclusively within this court's jurisdiction under 29 U.S.C. §1132(e). Garratt, 245 F.3d at 948. Thus, removal of the action to this court was appropriate.

III. State Claims

Plaintiff further argues that even if his breach of contract claim is deemed to be an ERISA claim over which this court has jurisdiction, his remaining state claims should be remanded to state court.

In any action in which the district court has original jurisdiction, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367(a); Harper v. AutoAlliance International, Inc., 392 F.3d 195, 209 (6th Cir. 2004). Claims form a part of the same case or controversy when they "derive from a common nucleus of operative facts." Ahearn v. Charter Township of Bloomfield, 100 F.3d 451, 454-55 (6th Cir. 1996).

14

The decision whether to exercise jurisdiction over supplemental state claims under §1367(a) is within the discretion of the court. Harper, 392 F.3d at 210. A district court may decline to exercise supplemental jurisdiction over a §1376(a) claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c)(1)-(4). In deciding whether to consider a state claim on the merits, the court should consider the interests of judicial economy and the avoidance of multiplicity of litigation, and balance those interests against needlessly deciding state law issues. Id. at 211. See also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)(district court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity ... to decide whether to exercise jurisdiction over a case ... involving pendent state-law claims.").

This court has concluded that plaintiff's breach of contract claim is preempted by ERISA. A federal claim over which this court has jurisdiction is pending in this case. Plaintiff has also asserted state claims of age discrimination and retaliation. While those claims are based on a different legal theory than the ERISA claim, proof of all those claims would likely entail evidence of the facts surrounding plaintiff's termination. Plaintiff alleges as part of the ERISA claim that defendants failed to pay his

15

prorated bonus for 2005. This failure may relate to the reasons for plaintiff's termination, which in turn would relate to his discrimination claims. In <u>Peters v. Lincoln Electric Co.</u>, 285 F.3d 456, 469 (6th Cir. 2002), the Sixth Circuit held that the trial court properly exercised supplemental jurisdiction over plaintiff's age discrimination claim under Chapter 4112, which was filed with plaintiff's ERISA-preempted breach of promise claim.

At this stage of the case, it does not appear that plaintiff's claims involve novel or complex issues of state law. In fact, Ohio courts apply the federal law framework from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to age discrimination actions under Ohio law. See <u>Mauzy v. Kelly Servs., Inc.</u>, 75 Ohio St.3d 578, 582, 664 n.E.2d 1272 (1996). The court cannot say at this point that the issues involved in the discrimination claims would substantially predominate over the ERISA claim. Plaintiff's argument that Ohio's statutory limitation on punitive damages is unconstitutional may be rendered moot if plaintiff's claims are dismissed prior to trial. Plaintiff has advanced no compelling reasons for declining to exercise jurisdiction over the state claims. Since remanding the state claims would require the parties to litigate in two different forums, the issues of judicial economy, convenience, fairness, and comity weigh at this juncture in favor of exercising supplemental jurisdiction.

Plaintiff's motion to remand the state law claims is denied. However, the court may reconsider its ruling at a later date if the federal claim is dismissed or the posture of the case otherwise changes.

IV. Motion to Dismiss

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted. The court notes that defendants have submitted evidence in the form of an affidavit in support of that motion. As a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.R.Civ.P. 56. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999); Weiner v. Klais & Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). The court hereby gives notice pursuant to Rule 12(b)(6) that the motion to dismiss will be considered as a motion for summary judgment. If the parties wish to submit any additional evidentiary materials relevant to the issues raised by the motion to dismiss, any such evidence shall be filed with the court on or before November 1, 2006.

V. Conclusion

In accordance with the foregoing, plaintiff's motion to remand this action to state court is denied.

Date: September 28, 2006         s\James L. Graham
                                 James L. Graham
                                 United States District Judge